UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PRIMACY ENGINEERING, INC. | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. 1:18-cv-00129-RP |
| | § | |
| SAN ENGINEERING; CHI WON LEE, | § | |
| An Individual; and JK OCEANICS, LLC | § | |
| Defendant | § | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant SAN Engineering ("SAN") files this Reply in Support of its Motion to Dismiss (Doc. 33)[1] to address issues raised in Primacy's Response (Doc. 43).

**I.      Summary**

Primacy fails to satisfy its burden to establish specific jurisdiction over SAN. It is beyond dispute that the alleged theft of trade secret components and tortious interference with the Hanjin contract occurred entirely in the Republic of Korea ("Korea"). Primacy's primary basis for jurisdiction over SAN here is SAN's alleged disclosure of component part numbers to JK Oceanics ("JKO"), a Texas company, for the purpose of buying component parts in the United States. But, even as alleged, this disclosure was not tortious, because Primacy does not even claim that the part numbers are trade secrets.

---

[1] Primacy filed an Amended Complaint at the same time it responded to SAN's Motion to Dismiss (*See* Doc. 44), but it only added more detailed jurisdictional facts, none of which substantively change the argument or analysis raised by SAN's original motion. Therefore, SAN asks that its original motion and this Reply be treated as addressing Plaintiff's Amended Complaint, and not as moot. *See e.g., Rodriguez v. Xerox Bus. Servs., LLC*, No. EP-16-CV-41-DB, 2016 WL 8674378, at *1 (W.D. Tex. June 16, 2016) (filing "an amended complaint may render moot a pending motion to dismiss," such as where it makes substantive changes and adds new causes of action) (quoting *Maxim Integrated Prods., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. SA–14–CV–1030–XR, 2015 WL 10990119, at *1 (W.D. Tex. Feb. 12, 2015)).

Moreover, JKO's contacts with Texas are not attributable to SAN as a participant in the alleged "scheme" with TKO to steal trade secrets or interfere with the Hanjin contract.

Ultimately, even if this Court had jurisdiction over SAN, the doctrine of *forum non conveniens* independently supports dismissal. Primacy filed this same lawsuit (minus JKO) in Korea and has been actively litigating those claims against SAN and Lee for some time. In fact, trial in the Seoul Civil District Court, originally set for March 2019, is now set for December 2019. Primacy does not dispute this fact, but now claims that Korea is not an adequate and available forum for resolving Primacy's claims against SAN, because JKO is not a party to that case. Of course, the only reason JKO is not a party to that case is that Primacy did not join JKO to that litigation, likely because JKO is not an indispensable party to this case. Given that all the private and public interest factors weigh heavily in favor of hearing Primacy's claims in Korea, the claims asserted here shall be dismissed.

## II.   Primacy fails to establish that specific jurisdiction over SAN is proper and fair.

"The lynchpin of personal jurisdiction over tort claims is that the defendant can reasonably foresee that it will be haled into the forum state to answer for tortious activity." *Eagle Metal Prods., LLC v. Keymark Enterps.*, LLC, 651 F. Supp. 2d 577, 595 (N.D. Tex. 2009). For instance, specific jurisdiction in Texas cannot be based on the acts of an alleged co-conspirator; the defendant's individual contacts with Texas alone must show purposeful availment of the forum state. *See Delta Brands, Inc. v. Danieli Corp.*, 99 Fed. Appx. 1, 5 (5th Cir. 2004). Unless Primacy establishes that SAN's allegedly tortious conduct—apart from

the alleged scheme with JKO—occurred in or was purposefully directed at Texas, this Court lacks specific jurisdiction over SAN.

### A.  SAN lacks the requisite minimum contacts with Texas.

#### 1.  None of SAN's allegedly tortious conduct was directed at Texas.

Even after amending its complaint, Primacy does not allege that SAN itself took any tortious action in Texas, directed any tortious acts at Texas, or caused any injury in Texas as part of its purported misappropriation or tortious interference. Primacy contends that Lee took its trade secrets and that SAN used those "stolen trade secrets to functionally replicate proprietary parts" and "obtain the necessary components via JK Oceanics" in Texas. (Doc. 43 at 9). Fundamentally, however, Primacy points to no tortious conduct by SAN that occurred in Texas. If a Korean company (SAN) acquired Primacy's trade secrets from a Korean resident (Lee), and if Lee obtained that information while working for Primacy in Korea, and if SAN used that information to wrongfully compete with Primacy in obtaining a contract in Korea to supply parts for the Korean government to use in a product for its military, then every aspect of the alleged trade secret misappropriation—and the tortious interference allegedly accomplished using that information—necessarily occurred only in Korea, not within the state of Texas.

Primacy acknowledges as much in its Response, suggesting instead that SAN's requests for price quotes and purchase orders sent to JKO are "communications" sufficient to confer jurisdiction, citing the Fifth Circuit's decision in *Trois* as support. (Doc. 43 at 10) (citing *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018). But

---

*Trois*, a fraud case, does not help. There, because the "actual content" of communications within the forum state was allegedly fraudulent, such communications themselves would constitute tortious conduct. *Trois*, 882 F.3d at 491–92. Thus, according to *Trois*, only when such communications, standing alone, are tortious does "that tortious conduct amount[] to sufficient minimum contacts with the state" to confer jurisdiction. *Id.* Primacy fails to show how any aspect of the price quotes or purchase orders is, standing alone, tortious.

Tellingly, although Primacy claims SAN "disclosed" its trade secrets by sending JKO part numbers for the components it sought to replicate (*See* Doc. 44 ¶¶ 69, 78, 91), it has never asserted that its part numbers are trade secrets. The trade secrets Primacy identifies include the specifications, designs, and related pricing information for the electrical power distribution system to be used in the LSF-II hoverboard Hanjin designed for the Korean Navy. (Doc. 44 ¶¶ 21–22, 27, 65). In its Amended Complaint, Primacy never asserts trade-secret protection over the part numbers it claims SAN disclosed. And, even if it had, Primacy's vice-president—on whose testimony Primacy's Response relies (Doc. 43 at 9)—never claims SAN disclosed them: "JK Oceanics contacted Microsemi and specifically asked for the exact part numbers associated with Primacy's SWBD design." (Doc. 43, Exhibit 2 at ¶ 10). It is equally possible that TKO learned the part numbers from Oceanics or Lee, not SAN—or even obtained them directly from Microsemi. SAN and JKO's communications about these part numbers is not tortious conduct directed at Texas.

Further, JKO did not manufacture any of the components it shipped to SAN; indeed, none of the components were manufactured or purchased in Texas. (Doc. 1 at 11-

12, ¶ 54). Texas was merely the conduit through which components manufactured in other states were shipped to SAN in Korea. That is not enough to confer jurisdiction. *See Delta Brands,* 99 Fed. Appx. at 5 ("[T]hat a small portion of [the defendant's] products were shipped by third parties into Texas does not establish that [the defendant] availed itself of the benefits and protections of Texas law."). SAN itself never shipped those components to or from Texas; but even if it had, shipments to Texas are insufficient contacts with the forum state to support jurisdiction over the misappropriation and tortious interference claims against SAN. *See Eagle Metal Prods.,* 651 F. Supp. 2d at 594. SAN's alleged connection with Texas is simply too tenuous and remote to confer this Court with specific jurisdiction over SAN.

### 2.    JKO's contacts with Texas are not attributable to SAN.

Primacy's fundamental premise for jurisdiction over SAN is that JKO's contact with Texas is attributable to SAN because the two "schemed" to use Primacy's trade secrets in interfering with Primacy's prospective business. (Doc. 43 at 9). However, the Fifth Circuit has squarely rejected this position.

In *Delta Brands*, a Texas plaintiff argued that the federal court in Texas had specific jurisdiction over a Swedish company based on the company's alleged conspiracy to misappropriate the plaintiff's trade secrets. *Delta Brands,* 99 Fed. Appx. at 5. Communications and visits to Texas involving the alleged co-conspirators were not enough; the Fifth Circuit held that "[t]o establish [a] prima facie case of specific personal jurisdiction, [plaintiff] was required to demonstrate that [the defendant] individually,

and not as part of the conspiracy, had minimum contacts with Texas." *Id.* at 6. Thus, to the extent that any co-conspirators had sufficient contact with Texas to confer jurisdiction over them, such contacts were not attributable to the Swedish company. *Id.*

The court in *Eagle Metal Products* reached a similar result. There, a Texas company sued non-resident defendants for intentional torts including trade-secret theft and tortious interference. *Eagle Metal Prods.*, 651 F. Supp. 2d at 583. The plaintiff alleged that the president of the defendant company that developed software for use with the plaintiff's product—software it exclusively licensed to plaintiff—conspired with the plaintiff's competitor to use the software with its own product in competition with the plaintiff. *Id.* The plaintiff urged that any co-conspirator's "acts in or directed at Texas" are attributed to all co-conspirators as "contacts" with Texas for jurisdictional purposes. *Id.* at 593. The court rejected this argument, noting that the Fifth Circuit requires plaintiffs to establish specific jurisdiction based on the independent conduct of each defendant, and "not as part of the conspiracy." *Id.* (quoting *Delta Brands*, 99 Fed. Appx. at 5). "Even with allegations of a conspiracy, the Court must still evaluate each of the Defendants' contacts separately to determine whether personal jurisdiction exists." *Id.*

Whereas the defendant president's defamatory statements made to the plaintiff's customers in Texas and fraudulent statements to the plaintiff were direct tortious contact with Texas, the plaintiff's competitor—the president's alleged co-conspirator—made no such independently tortious communications to Texas. *Id.* at 594. Nor did the court find the competitor's shipment of its product to one of its customers in Texas—arguably part

of the scheme—constituted direct contact related to the alleged torts. *Id.* Thus, participation in the alleged "scheme" failed to confer jurisdiction over the competitor.

Here, jurisdiction over SAN cannot derive solely from SAN's alleged participation in a scheme with JKO. Sending purchase orders, price quotes, and part numbers to JKO— like the communications in *Delta Brands* and *Eagle Metal Products*—was not independently tortious, and Primacy fails to show otherwise. Moreover, any parts shipped to Texas were intended for customers in Korea, not Texas, and even if they were, equate no more to direct contact with Texas than the shipment in *Eagle Metal Products.*

    **B.**    **Jurisdiction over SAN, even if proper, would be unfair and unreasonable.**

Primacy also fails to offer any explanation for how the relevant interests of Primacy, Texas, or the interstate judicial system outweigh the extensive burden a Korean company would face in litigating this case in Texas, even as the same dispute against SAN is currently being litigated and nears trial in Korea. It is undisputed that Primacy's suit centers on technology developed by Korean engineers—and allegedly misappropriated by a Korean company—for a product to be used by the Korean military and produced by a Korean company. That SAN's managing director speaks some English, as Primacy notes, does not make it less burdensome, more convenient, or more reasonable to require a company whose employees and officers all conduct their business in Korean and all speak Korean, to litigate an entirely Korean dispute in English.

Equally misplaced is Primacy's argument that there is no added burden to SAN in translating its Korean-language documents into English because those documents will

need to be translated for Primacy's case against JKO in Texas. To begin with, it is the suit against SAN—and not against JKO—that is evaluated for its burden on SAN. Given that Korean law provides jurisdiction over JKO, as shown below,[2] Primacy can seek to resolve its claims most effectively and conveniently in Korea, without imposing any of the burdens imposed by requiring that SAN also defend these claims in Texas. And, because all of SAN's acts that Primacy alleges were tortious occurred in and were directed entirely at Korea—not Texas—Texas has no apparent interest in the case whatsoever. With virtually no discernable interests to outweigh the burdens imposed by litigating this dispute in Texas, this Court should decline jurisdiction over SAN for this reason as well.

## III.    This Court should dismiss this case on *forum non conveniens* grounds.

Primacy's entire argument against dismissal for *forum non conveniens* hinges on its unsubstantiated claim that JKO is not subject to jurisdiction in Korea—a claim that wholly contradicts Korean law. (*See* Doc. 43 at 15; *see also* Exhibit 1 at ¶ 7). Korean courts have international jurisdiction over any parties to a dispute that "is substantively related to the Republic of Korea" and over any persons against whom there is a claim based on the same facts or subject matter as a case before the Korean court. (*See id.* at ¶¶ 2–4 (citing Korean Nat'l Statutes, Art. 2(1), (16); Korean Civ. P. Act, Art. 25)).

And, as Primacy observes, "[a]n alternative forum is considered available if the entire case and all parties can come within its jurisdiction." *Id.* (quoting *Vasquez v.*

---

[2] The Declaration of Heeyeon Kim is attached hereto as Exhibit 1 simply to address the argument Primacy raises in its Response (Doc. 43 at 15), contending that Korea is not an adequate forum because JKO would not be subject to jurisdiction in Primacy's ongoing litigation there, and to assist this Court in determining Korean law in that regard, pursuant to Federal Rule of Civil Procedure 44.1.

*Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003)). Because claims against JKO are based on the same subject matter as the ongoing Korean litigation, and because both suits fundamentally relate to Korea, Primacy could have sued JKO in Korea together with SAN, Lee, and Oceanic—and may do so at any time. (*See* Exhibit 1 at ¶¶ 6–7). Korea is plainly available as an adequate alternate forum, satisfying the first basis for *forum non conveniens*. *See Moreno v. LG Elecs., USA, Inc.,* 800 F.3d 692, 696 (5th Cir. 2015).

In *Delta Brands*, the Fifth Circuit dismissed claims against the nonresident defendant company on *forum non conveniens* grounds very similar to those presented here. The court agreed that the private interest factors did not favor Texas because in Italy:

- there was better overall access to sources of proof, and language barriers were less problematic, given that most of the witnesses and documents were in Italy; and
- the cost of obtaining attendance of willing witnesses was lower, because almost all of the relevant testimony would be provided by European witnesses.

*Delta Brands,* 99 Fed. Appx. at 8.

Given that all the parties to this case are subject to jurisdiction in Korea, the private interest factors heavily weigh in favor of dismissal. Access to proof is unquestionably easier in Korea, because almost all the witnesses and evidence involved in Primacy's case are entirely in Korea. (*See* Doc. 43 at 16). And all claims except those against JKO will involve testimony almost solely from Korean witnesses, making the cost of obtaining witnesses far lower in Korea. With JKO the only foreign party, and a bit player in the alleged "scheme," requiring that JKO defend itself in Korea will be far less burdensome than the alternative. These private interest favors heavily favor dismissal.

The public factors weighed by the Fifth Circuit in *Delta Brands* are also instructive here. There, the court found that the case was "fundamentally an Italian dispute, rather than a Texas dispute," because the agreement at issue was presented, negotiated, and executed in Italy, where the alleged breach of the agreement occurred. *Delta Brands,* 99 Fed. Appx. at 9–10. Further, Italy's "interest in regulating corporations that operate within its boundaries" was stronger than Texas' "interest in hearing a case brought by one of its citizens." *Id.* at 10. Since Italian law would apply, hearing the case in Italy also avoided problems in applying foreign law. *Id.* Thus, "it would be unfair to burden Texas citizens with jury duty, since this is basically an Italian dispute." *Id.*

This dispute is no less fundamentally a Korean one and should be treated similarly. Like the dispute in *Delta Brands*, the alleged trade secret creation and theft here necessarily took place in Korea, where the contract Primacy claims SAN tortuously obtained was awarded and where it is to be fulfilled. Even if Texas has an interest in hearing the dispute against JKO, Korea has a stronger interest in regulating the behavior of Korean company SAN, the components SAN provides to Korean company Hanjin, and the end product for the Korean Navy. The existing Korean litigation involves Korean claims, to which Korean law will apply. It would be unfair to burden Texas citizens with jury duty, since this is fundamentally a Korean dispute. Accordingly, the balance of relevant private and public interest factors favor dismissal. *See Moreno,* 800 F.3d at 696.

For all these reasons, this Court should dismiss claims against SAN for lack of personal jurisdiction.

Respectfully submitted,

By: /s/ David J. Park
David J. Park
State Bar No. 24025582
dpark@parkjunlaw.com
Park & Jun, PLLC
2000 Royal Lane, Suite 204
Dallas, Texas 75229
Tel: 972-241-6900
Fax:  214-257-8633

**ATTORNEYS FOR**
**SAN Engineering Co., Ltd.**

## CERTIFICATE OF SERVICE

I hereby certify that on **May 28, 2019**, the foregoing document is being filed with the Clerk of the U.S. District Court, Western District of Texas, using the electronic case filing system of the court, which electronically will send a "Notice of Electronic Filing", with a link to an electronic copy of this document, to the attorneys of record who have consented in writing with this court to accept such as service of this document by electronic means.

Jorge A. Padilla
jpadilla@jw.com
Scott W. Weatherford
sweatherford@jw.com
Jackson Walker, LLP
100 Congress Ave., Suite 1100
Austin, Texas 78701
***Attorneys for Plaintiff,***
***Primacy Engineering, Inc.***

Jesse Gessin
jgessin@kelleranderle.com
Michael A. Schachter
mschachter@kelleranderle.com
Keller/Anderle LLP
18300 Von Karman Ave., Suite 930
Irvine, California 92613-1057
***Attorneys for Plaintiff,***
***Primacy Engineering, Inc.***

/s/ David J. Park
David J. Park