IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PRIMACY ENGINEERING, INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | 1:18-CV-129-RP |
| § | | |
| SAN ENGINEERING, CHI WON LEE, § | | |
| and JK OCEANICS, LLC, § | | |
| § | | |
| Defendants. § | | |

## ORDER

Before the Court is Defendant SAN Engineering's ("SAN") Motion to Dismiss, (Dkt. 33). Plaintiff Primacy Engineering, Inc. ("Primacy") filed a response, (Dkt. 43), and SAN replied, (Dkt. 48). After the briefing was complete, the parties participated in a phone conference to offer additional argument on the motion. (*See* Dkts. 49, 50). Having considered the parties' briefs and arguments, the record, and the relevant law, the Court finds that SAN's motion should be granted.

## I. BACKGROUND

This is a trade secrets case involving a mix of American and South Korean companies. (Compl., Dkt. 1, at 1).[1] Primacy, a company that specializes in marine industrial equipment for military use, (*id.* at 4), alleges as follows. Before 2017, a company called GMB (USA), Inc. ("GMB-USA") had for years supplied a South Korean military contractor, Hanjin Heavy Industries Corporation ("Hanjin"), with components to make marine hovercraft vehicles for the Republic of

---

[1] After the briefing for this instant motion became complete, Primacy filed an amended complaint. (Dkt. 44). Although an amended pleading may moot a motion to dismiss pertaining to the original pleading, *Rodriguez v. Xerox Bus. Servs., LLC*, EP-16-CV-41-DB, 2016 WL 8674378, at *1 (W.D. Tex. June 16, 2016), it does not necessarily do so. If "the objections raised by the motion remain unresolved" by the plaintiff's amendments to its pleading, a court may still decide the motion to dismiss. *Amaya v. Crowson & Crowson, LLP*, EP-13-CV-00130-DCG, 2013 WL 12126243, at *2 (W.D. Tex. June 6, 2013). Here, the Court finds that Primacy's claims against SAN should be dismissed on *forum non conveniens* grounds for reasons unaffected by Primacy's amended allegations. Accordingly, SAN's motion is not mooted by the amended complaint.

1

Korea Navy. (*Id.* at 1). In 2017, Primacy bought many of GMB-USA's assets, which included a trade-secret technical data package that GMB-USA had created in its work for Hanjin. (*Id.* at 1–2).

Defendant Chi Won Lee worked for GMB-USA from 2011 until 2015, when he went to work for SAN, a competitor. (*Id.* at 2). He also founded a Korean company called Oceanics, through which he has disrupted Primacy's relationships with its suppliers. (*Id.* at 9). Two years later, SAN outbid Primacy for Hanjin's contract, which it could not have done so without learning Primacy's trade secrets from Lee. (*Id.* at 2, 10). All of this conduct—Lee's defection for SAN, his alleged trade-secrets disclosure to SAN, and SAN's use of that information to bid for the Hanjin contract—took place in South Korea. (*Id.* at 9–10).

Nonetheless, Primacy sued Lee and SAN in this Court, along with an Austin-based company called JK Oceanics that allegedly used Primacy's trade secrets to help SAN perform its Hanjin contract. (*Id.* at 11). SAN needs parts from the United States but requires a cooperative U.S. partner to secure those parts and ship them to Korea. (*Id.*). Enter JK Oceanics, operated by another allegedly disgruntled formed GMB-USA employee named Ji Min Justin Kwon ("Kwon"). (*Id.*). Primacy alleges that SAN is sending Kwon misappropriated trade-secret information so that he will know what parts to acquire for it. (*Id.* at 11–12).

To remedy the misappropriation of its trade secrets, Primacy sued SAN in Korean court. (Mot., Dkt. 33, at 2). Primacy then also sued SAN, Lee, and JK Oceanics in this Court. (Compl., Dkt. 1, at 1). SAN now asks the Court to dismiss all of Primacy's claims against it for lack of personal jurisdiction and on the ground of *forum non conveniens*. (Mot., Dkt. 33, at 3, 9). Because the Court finds that dismissal is appropriate on the ground of *forum non conveniens*, it does not decide whether it has personal jurisdiction over SAN.

2

## II. LEGAL STANDARDS

The doctrine of *forum non conveniens* "proceeds from the premise that in n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007) (cleaned up). Whether to do so involves two steps. First, the court must determine whether there exists an adequate alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981). If so, then the court must determine which forum is best suited to the litigation according to "private and public interest factors." *DTEX*, 508 F.3d at 794 (citation and quotation marks omitted).

The "private interest" factors include:

(i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of the premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 699 (5th Cir. 2015) (cleaned up). Courts also look at the enforceability of a judgment obtained in the alternate forum and "whether the plaintiff has sought to vex, harass, or oppress the defendant." *Id.* (cleaned up).

The "public interest" factors include:

(i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having a trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (citing *DTEX*, 508 F.3d at 794).

The defendant has the burden of persuasion. *DTEX*, 508 F.3d at 794. Ordinarily a "strong favorable presumption" is applied to the plaintiff's choice of forum, *id.* at 795, especially when, as here, the chosen forum is the plaintiff's home forum. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 430 (2007); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless

the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). The "ultimate inquiry" of this analysis is "where trial will best serve the convenience of the parties and the interests of justice." *DTEX*, 508 F.3d at 794 (citation and quotation marks omitted).

### III. DISCUSSION

At the outset, the Court must determine whether there exists an adequate alternative forum. *Piper Aircraft*, 454 U.S. at 255 n.22. A foreign forum is available "when the entire case and all the parties can come within that forum's jurisdiction." *DTEX*, 508 F.3d at 796. A foreign forum is adequate "when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the all the benefits of an American court." *Id.* The substantive law of the foreign forum "is presumed to be adequate unless the plaintiff makes some showing to the contrary," and adequacy "does not require that the alternative forum provide the same relief as an American court." *Id.*

With those principles in mind, the Court finds that the Republic of Korea is an adequate alternative forum. First, Korea is an available forum because all of the parties can come within that forum's jurisdiction. Primacy has already sued SAN and Lee in Korea, asserting the same kinds of claims and seeking the same kind of relief as it does in this action. (Lee Aff., Dkt. 33-1, at 2). Trial in that suit is underway, with three hearings held in March, April, and May of this year and more to come. (Kim Decl., Dkt. 48-1, at 3; Conf., Dkt. 50). The unrebutted testimony from SAN's Korean-law expert is that JK Oceanics can be added to Primacy's Korean suit, even at this late stage; the Korean court would simply add more hearings to its trial schedule. (Kim Decl., Dkt. 48-1, at 3–4; Conf., Dkt. 50).

Second, Primacy has not met its burden to contradict the presumption that Korean substantive law is adequate. In its Korean suit, Primacy seeks damages and injunctive relief—

4

including an injunction barring SAN from using or disclosing Primacy's trade secrets and requiring SAN to abandon its Hanjin contract—similar to what it seeks in this action. (Am. Compl., Dkt. 23, at 23; Conf., Dkt. 50). Asked to identify relief that Primacy could not obtain in Korean court, counsel for Primacy observed only that it cannot get relief from JK Oceanics in that action because JK Oceanics is not a party to that action. (Conf., Dkt. 50). But that can be remedied by adding JK Oceanics to the Korean litigation. There is otherwise no evidence in the record that Primacy would be "deprived of all remedies or treated unfairly." *DTEX*, 508 F.3d at 796. The Court therefore finds that the Republic of Korea is an adequate forum. The question then becomes which forum is best suited to the litigation according to the private and public interest factors relevant to the *forum non conveniens* analysis. *DTEX*, 508 F.3d at 794. As discussed below, the Court finds that SAN has met its burden to demonstrate that these factors weigh heavily in favor of dismissal, so much so that they outweigh the presumption in favor of Primacy's chosen forum.

**A. Private Interest Factors**

1. Ease of Access to Sources of Proof

The first private interest factor supports dismissal. SAN argues that much of the documentary evidence is in Korea, where most of the conduct relevant to this action took place. (Mot., Dkt. 33, at 11). SAN and Lee are both in Korea, where Lee operates a company based in Busan. (Compl., Dkt. 1, at 9). SAN submitted contract proposals to another Korean company, Hanjin, allegedly with the aid of Primacy's misappropriated trade secrets. (*Id.* at 10). Documents relevant to whether Lee and SAN took or disclosed Primacy's trade secrets will therefore largely be in Korean and need to be translated. (Lee Aff., Dkt. 39-1, at 3). Indeed, even SAN's correspondence with JK Oceanics is in Korean and has been translated for use in resolving this motion. (*See, e.g.*, Purchase Order Email, Dkt. 43-9). Even given the availability of electronic document production,

5

"obtaining and translating these documents would be burdensome, time-consuming, and costly in this forum." *DTEX*, 508 F.3d at 799.

### 2. The Availability of Compulsory Process for the Attendance of Unwilling Witnesses

The second private interest factor is neutral. Many of the relevant nonparty witnesses, such as Hanjin employees and Korean Navy officials, are in Korea. (Kim Aff., Dkt. 48-1, at 3). Hanjin has already responded to discovery in the Korean suit. (Lee Aff., Dkt. 39-1, at 3). SAN argues, without rebuttal, that securing attendance of these witnesses for trial in this district would be difficult. (Mot., Dkt. 39, at 11). Indeed, it has taken over a year for Primacy to serve Lee with process. (*See* Schachter Aff., Dkt. 13-1). Primacy responds only that a Korean court would have similar difficulty securing the attendance of nonparty witnesses located in America, such as employees of two companies that sold parts to JK Oceanics. (Resp., Dkt. 43, at 16). Although the nature of Primacy's allegations suggests that the nonparty witnesses in Korea outnumber those in America, the record does not clearly support a finding in either direction. SAN has therefore not persuaded the Court that this factor favors dismissal.

### 3. The Cost of Securing the Attendance of Willing Witnesses

The third private interest factor supports dismissal. Korea is home to Lee, SAN's employees, and a third of Primacy's employees. (Lee Aff., Dkt. 39-1, at 3). Seoul is nearly 7,000 miles from Austin; when the distance between venues "is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004). Primacy does not dispute SAN's position that requiring Korean party witnesses to travel to Austin for trial would be burdensome; it only suggests that SAN could shoulder that burden and points out that American party witnesses from Primacy and JK Oceanics would have to travel to Korea if that were the forum for this action. (Resp., Dkt. 43, at 17). But many of the American party witnesses who are potentially relevant to this case—save only

6

Kwon—have either traveled Korea for trial in Primacy's suit against SAN there or will soon. (*See* Kim Aff., Dkt. 48-1, at 3). The costs to Korean party witnesses to attend trial in this district far outweigh the costs to JK Oceanics's sole party witness to attend trial in Korea.

### 4. The Ability to View the Premises

The parties agree that this factor is irrelevant. (*See* Mot., Dkt. 33, at 12; Resp., Dkt. 43, at 12).

### 5. Other Practical Factors That Make Trial Easy, Expeditious, and Inexpensive

The final private interest factor favors dismissal. SAN argues that "there is nothing easy, expeditious, or inexpensive" about having the parties duplicate the ongoing Korean litigation in this district. (Mot., Dkt. 33, at 12). Primacy's only response is that this action is not duplicative of the Korean litigation because JK Oceanics is not a party to that litigation. (Resp., Dkt. 43, at 18). But as SAN has pointed out without rebuttal, Primacy could have joined JK Oceanics to its Korean suit and still can. (Kim Aff., Dkt. 48-1, at 3–4). It would be more expeditious to add JK Oceanics to an action that is already underway than to force SAN and Lee to relitigate the same claims in a forum that is 7,000 miles away.

## B. Public Interest Factors

### 1. Administrative Difficulties Flowing from Court Congestion

The first public interest factor, which is concerned with differences in time to disposition or trial, favors dismissal. *See MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 674 (S.D. Miss. 2013) (considering time-to-trial differences between courts). The Korean suit is already in trial, and JK Oceanics can be added to that litigation. (Kim Aff., Dkt. 48-1, at 3–4). This action, meanwhile, is in its early stages. Lee has not been served, a scheduling order was just entered in May, and trial is not scheduled until June 2020.

### 2. The Interest of the Forum in Resolving the Controversy

The second public interest factor also favors dismissal. This case is, at root, about a Korean company (SAN) that took over a contract to supply hardware to a Korean military contractor (Hanjin) for use in a marine hovercraft that will be used by the Korean Navy. (Compl., Dkt. 1). At the heart of this alleged scheme, meanwhile, is a Korean employee who defected from the Korean arm of a New Jersey company. (*Id.*). The only connection to this district is JK Oceanics, whose alleged role in this scheme is to acquire parts for SAN from American companies located outside of this district and then ship them to Korea. (*Id.*; Conf., Dkt. 50). This is fundamentally a Korean controversy. The interest in "resolving local controversies locally," *DTEX*, 508 F.3d at 802, therefore lies overwhelmingly in Korea. It is Korean courts that have the greater interest in deciding whether a Korean employee of Primacy's Korean offices gave trade secrets to another Korean company so that it could win a contract with a Korean military contractor.

### 3. The Governing Law

The third and fourth public interest factors, which concern the forum's familiarity with governing law, the application of foreign law, and conflict of law, are neutral. Although this Court would not need to apply Korean law to determine the issues in this action, (Mot., Dkt. 33, at 13), neither would a Korean court need to apply U.S. federal or state law to determine the issues in a parallel Korean suit. After all, Primacy does not dispute SAN's evidence that Primacy's Korean suit asserts essentially the same claims and seeks essentially the same relief as it does in this action. (Lee Aff., Dkt. 33-1, at 2). Whether Primacy's claims against SAN proceed in this district or in Korea, no court will need to apply foreign law or resolve a conflict of law.

### 4. The Burden on the Citizens in an Unrelated Forum

The final public interest factor, which is concerned with "avoiding an unfair burden on citizens in an unrelated forum with jury duty," favors dismissal. *DTEX*, 508 F.3d at 803. As

discussed above, Korea has a greater interest in this dispute than does Texas. Because JK Oceanics plays only a tangential role in this action, "[j]ury duty should not be imposed on the citizens of Texas in a case that is so slightly connected with this state." *Id.*

## IV. CONCLUSION

The Republic of Korea is an adequate and available forum for this case, and both the private and public factors strongly support dismissal of this case on the grounds of *forum non conveniens*. Accordingly, **IT IS ORDERED** that SAN's motion to dismiss, (Dkt. 33), is **GRANTED**. Primacy's claims against it are **DISMISSED** on *forum non conveniens* grounds.

**SIGNED** on July 29, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE